## HARDENBERGH v. HARDENBERGH.

THE refusal of the wife to accompany her husband on a change of his residence, followed by actual cessation of matrimonial cohabitation, and unattended by any excusing or explanatory circumstances, is evidence of desertion, and authorizes a divorce.

Desertion consists of an actual cessation of matrimonial cohabitation between the parties, coupled with the intent to desert, in the mind of the offending party.

APPEAL from the Sixth District.

Suit for divorce, *a vinculo*. For facts generally, see opinion. Plaintiff had a decree of divorce from bed and board, with leave to the parties, at any time hereafter, to file a joint petition to modify or discharge the decree, neither party being permitted to marry any other person during the lifetime of the other party.

The Court below found, among other things, that the plaintiff had never, in good faith, asked his wife to accompany him to California; finding, at the same time, that defendant refused to come.

Plaintiff appeals, and the briefs of counsel indicate that the defendant also appealed, though that fact is not disclosed by the record.

*John Heard*, for plaintiff and Appellant.

1. Plaintiff, as husband, had a right to change the common matrimonial domicil. (Bishop on Marriage and Divorce, Secs. 514, 728—730.)

2. The evidence shows that Appellant did change his own domicil, in the year 1849, from New Jersey to California, and that, in 1852, and again in 1857, he returned from California to New Jersey, for the purpose of removing his wife and family to California, and that defendant, on both occasions, absolutely and peremptorily refused to come to California, and declared to plaintiff and his friends, in answer to his and their importunities to come, that she never would come—in short, that she deserted him.

The evidence of the plaintiff on this point is unnecessarily full; he has shown the negative fact, that there was no cohabi-

Hardenbergh *v.* Hardenbergh.

tation, when the evidence shows a prior willful desertion; desertion and intent being once shown, the same intent, and, indeed, the desertion, will be presumed to continue until the contrary appears. (Bishop on Marriage and Divorce, Secs. 511, 365; 1 Greenl. Ev. Secs. 41, 42.)

Desertion was made out, beginning in 1852; there was no condonation in 1857; and if there had been, the continuation of the same conduct since that time, is equally fatal to the defense, and no bar to the divorce. (Bishop on Marriage and Divorce, Sec. 372.)

3. The finding of the District Judge, that plaintiff had not, in good faith, requested the defendant to come with him to California, is unsupported by evidence.

*H. H. Hartley*, for Respondent.

To entitle plaintiff to obtain a divorce, on the ground of desertion, he must affirmatively prove the following facts to have existed at the time of filing his bill:

*a.* Actual cessation of matrimonial cohabitation between the parties for the space of two years, continuously, immediately preceding the application.

*b.* Positive intention in the mind of the guilty party to willfully desert.

*c.* That both those facts united and existed in his case. (Bishop on Divorce, Sec. 506.)

If these positions be correct, then the facts of the case show, conclusively, that plaintiff has failed to bring himself within the law.

Even conceding there was a cessation of matrimonial cohabitation, yet, there was no intention on the part of defendant to desert the plaintiff. The mere fact, that she did not come to California with him in 1849, 1852, or 1857, does not constitute desertion. There must have been a steady, fixed determination in her mind, totally and forever to renounce and abandon her husband, to refuse to perform her marital duties, and to consider herself wholly separated from him. And further, if either party fraudulently commits acts to procure the desertion, or does not, in good faith, endeavor to prevent it, he or she is in *pari delicto* with the guilty party, and not entitled to any relief.

Hence, the finding of the Court below, of desertion by the wife, and of bad faith on the part of plaintiff, in his request that she accompany him to this State, cannot stand together.

Counsel then argued, that the evidence showed no desertion; that plaintiff never took any decided action as to his wife's coming to California; that he was now in favor of it, now against it; that she could not, from his actions, tell whether he really desired it or not, and that her refusal to come, did not amount to a willful determination to abandon him within the sense of the law. That to sustain a divorce for desertion, it must be clearly proven. (*Friend* v. *Friend*, Wright, Ohio, 639.) It was further argued, that the regular support furnished by plaintiff to defendant, from 1852 to 1857, negatived the idea, that he construed her refusal to come to California into desertion; and that it amounted to tacit consent, that she might reside in New Jersey. (*Amsden* v. *Amsden*, Wright, Ohio, 67; *White* v. *White*, Id. 138; *Jones* v. *Jones*, 13 Ala. 145.)

COPE, J. delivered the opinion of the Court—BALDWIN, J. and FIELD, C. J. concurring.

This is a suit for a divorce on the ground of desertion. The parties were married in 1836, in the State of New Jersey, where they subsequently resided until 1849, when the plaintiff came to California. It appears that he returned to New Jersey in 1852, for the purpose, ostensibly, of removing his family, consisting of the defendant and three children, to this State; but he avers that the consent of the defendant to such removal could not be obtained, and that he was consequently defeated in the accomplishment of this purpose. This is substantially the cause of action as stated in the complaint; and it is alleged that a separation of the parties immediately ensued—the defendant remaining in New Jersey, where she still resides, and the plaintiff returning to this State.

The husband, being the head of the family, and bound for its support and maintenance, may change the matrimonial domicil at pleasure, and it is the duty of the wife to submit to the reasonable exercise of this right. We have no doubt that the refusal of the wife to accompany the husband upon a change of his residence, followed by an actual cessation of matrimonial

Hardenbergh *v.* Hardenbergh.

cohabitation, and unattended by any excusing or explanatory circumstances, would constitute sufficient evidence of desertion to authorize a divorce. We do not see upon what principle a different rule could be maintained, for whether the wife abandon the residence of the husband, or refuse to follow him upon a change of his residence, the result, in fact, is the same, and the legal consequences should be the same also. If the determination of this case rested upon the question of the sufficiency of such evidence to establish the fact of desertion, we should have no hesitation in granting to the plaintiff the relief which he asks. But our opinion is that the case does not present this question.

Bishop, in his work on Marriage and Divorce, (Section 506,) says: " The offense of desertion is obviously composed of two ingredients, namely : 1st, an actual cessation of the matrimonial cohabitation between the parties, and, 2d, an intent to desert, in the mind of the party offending. Both must combine to make the offense complete. But it is wholly immaterial whether the distance to which the parties remove from each other be great or small, except, perhaps, as illustrating, under circumstances, their intent; for the criterion in all cases is the intent to abandon."

It does not sufficiently appear that the defendant intended to desert. It is shown that the plaintiff, on the occasion of his return in 1852, frequently stated that it was not his intention to remove her to this State, and that the unsettled condition of society here rendered it an inappropriate place for the residence of a lady. These statements were made in some instances to the defendant herself, and in others to the friends and associates of the family under such circumstances that they must have come to her knowledge. It appears that, a few days prior to his departure she expressed a willingness to accompany him, and that he objected upon the ground that her preparations for the journey would necessarily involve delay. The intercourse of the parties during this period seems to have been of the most pleasant and agreeable character. The witnesses unite in saying that their treatment of each other was at all times kind and affectionate.

We think the circumstances were sufficient to authorize the

defendant to regard any proposition for her removal, as a proposal addressed merely to her discretion, and which she could reject without incurring the penalty or even suspicion of desertion. She could not have supposed that her conduct would be regarded as a renunciation of her conjugal rights, or subject her to the legal consequences of a willful abandonment of her matrimonial duty. Under the circumstances, if the plaintiff intended to visit upon her the penalty of disobedience, he should have presented to her, in plain and unequivocal terms, the alternative of a compliance with his wishes, or a surrender of all her claims to his support and protection. It is unnecessary to pursue the case further. The facts disclosed by the record are not sufficient to entitle the plaintiff to the relief which he asks, or any relief whatever.

The judgment of the Court below, granting a divorce from bed and board, must be reversed, and the complaint dismissed.

Ordered accordingly.